## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES JANNUZZIO and** | : | **CIVIL ACTION** |
| **TREVOR NIX, individually and** | : | |
| **Derivatively on behalf of** | : | |
| **GREENVILLE VENTURES, LLC,** | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 22-cv-01189** |
| | : | |
| **PETER C. DANBY, et al.,** | : | |
| *Defendants,* | : | |
| **and** | : | |
| **GREENVILLE VENTURES, LLC,** | : | |
| *Nominal Defendants.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                          **July 7, 2022**

### I.   INTRODUCTION

This case involves a dispute between the minority and majority shareholders of a closely

held company, Greenville Ventures, LLC ("Greenville" or the "Company"). The two and only

minority shareholders, Plaintiffs James Jannuzzio ("Jannuzzio") and Trevor Nix ("Nix"), bring a

series of claims, including a federal civil RICO claim, both individually and derivatively on

behalf of Greenville, alleging that Greenville's manager, Defendant Peter C. Danby, ("Danby")

along with other Defendants[1] (including Greenville majority shareholder, SRILX Partners),

---

[1] Plaintiffs, Jannuzzio and Nix, bring the present action against Defendants Danby, Iron Gate
Hardware, LLC ("IronLinx"), SRILX Products, LLC ("SRILX Products"), SR Leasing, LLC
("SR Leasing"), Tandem Hosted Resources, LLC, Tandem Hosted Resources, Inc., Lixing
Huang ("Huang"), SRILX Partners, LLC ("SRILX Partners"), and GV Partners, LLC ("GV
Partners"), alleging significant losses to their purported business and property and that of

engaged in misconduct that resulted in harm to Jannuzzio and Nix personally, as well as harm to Greenville.

In large part, the harms alleged in connection to the civil RICO claim, are, by nature, harms to Greenville. Though, it is clear from the Amended Complaint and the remedies requested therein that Plaintiffs' primary motivation in bringing this claim is personal economic recovery, which, if achieved, would come at the expense of Greenville's ability to fully recover in relation to the derivative claims. Despite Jannuzzio and Nix's attempt to characterize these harms as individual injuries, this Court finds for the reasons below that Plaintiffs cannot meet the statutory standing requirements necessary to maintain their civil RICO claim in their individual capacities due to the fact that the harms alleged in connection to the RICO claim are indirect harms resulting from direct harm to Greenville rather than direct injury to any of their personal business or property. *See* 18 U.S.C. § 1964(c). Further, upon consideration of the remainder of the claims and because of the indisputable conflicts of interest that exist between Jannuzzio and Nix as individual claimants and as purported derivative plaintiffs, this Court cannot properly, under the Federal Rules of Civil Procedure, allow Jannuzzio and Nix to proceed in federal court with any of their claims on a derivative basis on behalf of Greenville. *See* Fed. R. Civ. P. 23.1.

Plaintiffs' First Amended Complaint (ECF No. 24) sets forth eight counts, as follows: Count I, RICO Violation (*Jannuzzio and Nix individually and derivatively on behalf of Greenville v. Defendants*); Count II, Breach of Fiduciary Duty (*Jannuzzio and Nix individually and derivatively on behalf of Greenville v. Danby and SRILX Partners*); Count III, Aiding and Abetting Breach of Fiduciary Duty (*Jannuzzio and Nix derivatively on behalf of Greenville v.*

---

Greenville, arising out of the Defendants' conduct. *See generally* ECF No. 24. Greenville is also named as a nominal defendant. *Id.*

*IronLinx, SRILX Products, SR Leasing, Tandem Hosted Resources, Inc. and Tandem Hosted Resources, LLC, and Huang*); Count IV, Minority Shareholder Oppression (*Jannuzzio and Nix v. Danby and SRILX Partners*); Count V, Civil Conspiracy (*Jannuzzio and Nix individually and derivatively on behalf of Greenville v. Defendants*); Count VI, Unjust Enrichment (*Jannuzzio and Nix individually and derivatively on behalf of Greenville v. Defendants*); Count VII, Conversion (*Jannuzzio and Nix individually and derivatively on behalf of Greenville v. Defendants*); Count VIII, Request for Inspection of Corporate Books and Records (*Jannuzzio and Nix v. Danby and Greenville*).

For the reasons set forth below, this Court will dismiss, without prejudice, Count I, in its entirety, as well as Counts II, III, V, VI, VII, to the extent they are brought derivatively. Additionally, because the Court concludes that Plaintiffs lack standing to maintain the RICO action (Count I), both individually and derivatively, the Court need not and will not reach the question of whether Plaintiffs adequately pled a substantive RICO claim. *See* ECF No. 25 § IV(C). Finally, the Court will also exercise its discretion and decline to exercise supplemental jurisdiction over the remaining state law claims brought by Jannuzzio and Nix individually. Accordingly, the Amended Complaint will be wholly dismissed without prejudice.

## II.   PARTIES

Nominal Defendant Greenville is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. ECF No. 24 ¶ 24. Greenville is an e-commerce jewelry retailer. *Id.* ¶ 50.

Plaintiff Jannuzzio is an individual and one of Greenville's three co-founders. *Id.* ¶ 13. Jannuzzio is a minority member of Greenville and owns a 25% share. *Id.* As discussed in more

detail below, Jannuzzio worked as an employee of Greenville from approximately May 2019 through May 2021. ECF No. 24 ¶ 13.

Plaintiff Nix is an individual and the second of Greenville's three co-founders. *Id.* ¶ 14. Nix is a minority member of Greenville and owns a 5% share. *Id.* Nix worked as an employee of Greenville from approximately May 2019 through early to mid-July 2021. *Id.*

Defendant Danby is an individual and the third and final one of Greenville's co-founders. *Id.* ¶ 15. Danby is also the manager of Greenville. ECF No. 24 ¶ 15. Danby, in his individual capacity, is not a member of Greenville. *Id.* Danby does, however own, either entirely or in majority part, SRILX Partners (also a named Defendant in this case), which owns a 70% of Greenville and is its majority member. *Id.* Aside from Defendant Huang, Danby owns or controls all other Defendants. *Id*. Specifically, Danby owns and controls, in addition to SRILX Partners, Defendants SRILX Products, IronLinx, SR Leasing, Tandem Hosted Resources, LLC, Tandem Hosted Resources, Inc., and GV Partners (collectively referred to herein as the "Danby Entities"). *Id.* Danby also works as an adjunct professor at the University of Delaware. *Id.*

Defendant IronLinx, directly or indirectly owned and controlled by Danby, is a Pennsylvania limited liability company with its principal place of business in Pennsylvania, which provides warehouse and fulfillment services. ECF No. 24 ¶ 16.

Defendant SR Leasing, directly or indirectly owned and controlled by Danby, is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. *Id.* ¶ 17.

Defendant Tandem Hosted Resources, Inc, directly or indirectly owned and controlled by Danby, is a Delaware corporation with its principal place of business in Pennsylvania. *Id.* ¶ 18.

Tandem Hosted Resources, Inc., operates under the d/b/a Qnectus and provides information technology services. *Id.*

Defendant Tandem Hosted Resources, LLC, directly or indirectly owned and controlled by Danby, is a Delaware limited liability company with its principal place of business in Pennsylvania, which provides information technology and data management services. *Id.* ¶ 19. (Defendants Tandem Hosted Resources, Inc. and Tandem Hosted Resources, LLC are collectively referred to herein as "Qnectus.")

Defendant SRILX Products, owned and controlled by Danby, is a Pennsylvania limited liability company with its principal place of business in Pennsylvania, which provides packaging, freight, and shipping services. ECF No. 24 ¶ 20.

Defendant GV Partners, is a Pennsylvania limited liability company, with its principal place of business in Pennsylvania. *Id.* ¶ 23. GV Partners is an e-commerce jewelry retailer that was created on May 6, 2021 and is owned and controlled by Danby. *Id.*

Defendant SRILX Partners, owned and controlled by Danby, is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. *Id.* ¶ 22. As previously mentioned, it is the majority and controlling member of Greenville, with a 70% share. *Id.*

Defendant Huang is an individual, who Plaintiffs plead upon information and belief, owns a minority share of SRILX Partners, and who is romantically involved with Defendant Danby and is the mother of Danby's child. *Id.* ¶ 21.

## III.    BACKGROUND[2]

---

[2] The Court accepts all factual allegations as true and construes all allegations and reasonable inferences in the light most favorable to the nonmoving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). In deciding a motion to dismiss, this Court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the

In or around the spring of 2017, Jannuzzio and Danby met at the University of Delaware, where Jannuzzio was Danby's student. ECF No. 24 ¶ 31. Due to their shared interest in entrepreneurial ventures, Danby and Jannuzzio's relationship evolved from that of teacher-student to mentor-mentee, and the two would often meet to discuss potential business ventures and ideas outside of class time. *Id.* ¶ 30.

In October 2018, Danby offered Jannuzzio employment with his company IronLinx, which he accepted. ECF No. 24 ¶ 32. In his role at IronLinx, Jannuzzio developed a marketing plan, which attracted a wide range of new customers, including several successful e-commerce customers, which, in turn, brought additional volume and revenue to IronLinx and created the need for IronLinx to expand its workforce. *Id.* ¶ 33.

Upon direction from Danby, Jannuzzio recruited his fellow University of Delaware business student and friend, Nix, to also join IronLinx as an employee. *Id.* ¶ 35. Following instructions from Danby, Jannuzzio and Nix learned the e-commerce business model utilized by IronLinx's successful e-commerce customers, including how to use Facebook accounts and Facebook business managers to target and advertise to potential customers. *Id.* ¶¶ 36–37.

With this new knowledge in hand, Danby, Jannuzzio, and Nix founded Greenville Ventures, LLC—an e-commerce jewelry retailer. ECF No. 24 ¶ 38. Greenville has no physical store locations and sells all its products online, advertising primarily through Facebook. *Id.* ¶ 50.

Greenville's Operating Agreement (the "Operating Agreement"), entered into April 23, 2019, sets forth the structure of Greenville's members and their respective ownership interests. *Id.* ¶ 40; *see also* ECF No. 24 Ex. A. Specifically, the Operating Agreement documents that

---

motion where the claims are based on those documents, and matters of public record. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

SRILX Partners, LLC contributed $70.00 of initial capital and acquired a 70% membership interest, that Jannuzzio contributed $25.00 of initial capital and acquired a 25% membership interest, and that Nix contributed $5.00 of initial capital and acquired a 5% membership interest. ECF No. 24 ¶ 40. Although Danby owns and controls SRILX Partners, he is not, in his individual capacity, a member of Greenville. *Id*. ¶ 41.

As outlined in the Operating Agreement, however, Danby was vested with broad authority to manage the business and affairs of Greenville as its "Manager." ECF No. 24 ¶ 41. Specifically, the Operating Agreement provides that "[m]anagement of the Company [Greenville] shall be exercised by the Manager…" and that "[e]xcept for those matters in which the approval of the Members is required…the powers of the Company [Greenville] shall be exercised by or under the authority of, and the business direction of, the Manager…and the Manager may make all decisions and take all actions for the Company not otherwise provided for." *See* ECF No. 24 Ex. A § 6.01. The Operating Agreement goes on to outline specific powers given to Greenville's Manager, including, *inter alia*, "determining distributions of the Company cash and other property." *Id.*

The Operating Agreement also contains a "Conflicts of Interest" section, which provides that Greenville's Members were permitted to engage in and own other interests that compete with Greenville. ECF No. 24 Ex. A § 6.05. More specifically, the Operating Agreement states:

> Subject to the other express provisions of the Agreement, each Member of the Company at any time and from time to time may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with the Company, with no obligation to offer to the Company or any other Member the right to participate therein.

*Id.*  On its face, the Conflicts of Interest section of Greenville's Operating Agreement applies only to Greenville's Members and not its Manager. *Id.*

With respect to distributions, the Operating Agreement provides:

> From time to time a majority of the Members shall determine to what extent (if any) the Company's cash on hand exceeds its current and anticipated needs, including without limitation, for operating expenses, debt service, acquisitions, and a reasonable contingency reserve. If such an excess exists, the Member or the Manager may cause the Company to distribute to the Members, in accordance with their Sharing Ratios, an amount in cash equal to that excess. No Member shall have a contractual right to any distribution other than distributions pursuant to Section 12.02 [e.g., in the event of liquidation and termination]…and that [f]rom time to time the Members or the Manager also may cause property of the Company, other than cash, to be distributed to the Members, which distribution must be made in accordance with their Sharing Rations and may be made subject to existing liabilities and obligations.

ECF No. 24 Exhibit A § 5.02.

Additionally, the Operating Agreement requires the Company to "keep books and records of accounts and…minutes of the proceedings of its Members," and Greenville's members have the right to inspect those books and records. ECF No. 24 Ex. A §§ 10.01, 1.01, 3.05.

From August 1, 2019 through December 31, 2019, Greenville generated approximately $1.54 million in sales, and in 2020 Greenville's sales increased to approximately $18.65 million. ECF No. 24 ¶¶ 72–73. In 2021, Greenville's first-quarter sales totaled $7.59 million ($30.36 million annualized). *Id.* ¶ 74.

Despite the high sales volume, Danby told Jannuzzio and Nix that Greenville's 2020 net profit was approximately $1.25 million. *Id.* ¶ 75. According to Plaintiffs, Greenville's net profit was not reflective of its sales and costs because Danby had been engaged in a scheme to defraud Greenville, Jannuzzio, and Nix in violation of his fiduciary duties. *Id.* ¶ 76. Specifically, Plaintiffs allege that Danby

> (i) engaged in a series of self-dealing transactions designed to divert Greenville's profits to Danby and Danby Entities to the detriment of Greenville and its minority members, Jannuzzio and Nix; (ii) made improper corporate payments to himself, Huang and Danby Entities; (iii) created and operated personal business ventures using the capital, personnel, equipment, assets and facilities

of Greenville; (iv) taken unaccountable loans and advances from Greenville; and (v) diverted business opportunities to himself and/or the Danby Entities.

*Id.* ¶ 76.

Plaintiffs allege that between July 30, 2020 and January 31, 2021, Danby caused Greenville to pay Qnectus, via mail or wire transfer, more than $42,000 for "unnecessary and/or non-existent IT services." *Id.* ¶¶ 79–81. Plaintiffs also allege that Danby caused Greenville to pay IronLinx, primarily via mail or wire transfer, approximately $3.6 million in less than 18 months for purported "warehousing and fulfillment services." *Id.* ¶ 82.

On July 20, 2021, Plaintiff Jannuzzio made a books and records demand (the "Books and Records Demand") on Greenville, which sought all documentation of transactions between Greenville and Danby or any entity in which Danby owns an interest.[3] ECF No. 24 Ex. C. On October 11, 2021, Greenville's counsel, in reference to the Books and Records Demand, stated that "Greenville has no independent records of …[transactions between Greenville and other companies which Danby owns] in its possession" and that all documents responsive to the request per statute had been provided. ECF No. 24 ¶ 85; *Id.* Ex. D.

In response to the Books and Records Demand a written agreement between Greenville and IronLinx (the "Ironlinx Agreement") was produced. ECF No. 24 ¶ 87. According to Plaintiffs, the IronLinx Agreement was entered into on behalf of both Greenville and IronLinx by Danby, and that it contains several terms that are "patently unfair to Greenville." *Id.* ¶ 89. Specifically, Plaintiffs point to Section 18 of the IronLinx

---

[3] The Books and Records Demand was made pursuant to 15 Pa. C.S. §8550(b).

Agreement that permits IronLinx to take ownership of Greenville's "abandoned" inventory, as well as to Section 19, which "reserves [IronLinx's] right to delete or otherwise purge its systems of any and all order data submitted by Retailer [Greenville] without notice once the order has been fulfilled or reconciled by IronLinx." ECF No. 24 Ex. E § 19.

Plaintiffs also allege that Greenville, at Danby's direction, paid over $3.3 million in payments via wire transfer to an overseas bank account (the "Overseas Account") owned by Defendant Huang ("and/or one of her relatives") for the purported purposes of acquiring jewelry for Greenville to market and sell. ECF No. 24 ¶ 95; *Id.* Ex. F. Plaintiffs assert Greenville has no records reflecting the products it received in exchange for the monies transferred to the Overseas Account, and that there is "no valid business justification for Greenville to pay its suppliers through another entity…[as] in its early months of operation, Greenville [paid] its product suppliers directly." ECF No. 24 ¶ 97.

Further Plaintiff alleges that between January 1, 2020 and March 31, 2021, Danby caused Greenville to pay Huang more than $150,000 via mail or wire transfer, and that these payments were not in exchange for services that Huang provided to Greenville. *Id.* ¶¶ 99-103; *Id.* Ex. F; *Id.* Ex. G.

In total, Plaintiffs allege that over an approximately two-year period, Danby caused Greenville to transfer more than $7 million to the Danby Entities, the Overseas Account, and Huang. ECF No. 24 ¶ 104. When Jannuzzio and Nix "questioned Danby about the amounts that Greenville was paying to the Danby Entities and the Overseas Account, Danby became agitated and told them that if they did not like it, he would have the Danby Entities charge Greenville even more." *Id.* ¶ 105.

Plaintiffs further contend that through Danby's control, Greenville transferred more than $1 million via mail or wire transfer in the form of purported "loans" to SRILX Products, IronLinx, SR Leasing, and Danby himself. *Id.* ¶ 108.

In response to the Books and Records Demand, Danby provided signed line of credit agreements between Greenville and SRILX Products (the "SRILX LOC") and Greenville and IronLinx (the "IronLinx LOC"), both dated November 1, 2019 and signed by Danby on behalf of SRILX Products and IronLinx respectively. *Id.* ¶¶ 109–110. Jannuzzio and Nix claim they had no knowledge of the SRILX LOC or the IronLinx LOC prior to the production of the agreements in response to the Books and Records Demand. *Id.* ¶ 111. Plaintiffs allege, upon information and belief, that despite being dated November 1, 2019, Danby actually signed the SRILX LOC and IronLinx LOC in 2021. ECF No. 24 ¶ 112.

Plaintiffs assert that the terms of the SRILX LOC and IronLinx LOC are facially unfair to Greenville's minority members as Greenville is "neither a lender nor in the business of providing financing to other companies [and] Danby caused Greenville to extend his companies SRILX Products and IronLinx each  line of credit up to $1 Million before Greenville was in business for 7 months, and at a time when Greenville had only been generating revenue for 3 months." *Id.* ¶ 115. Plaintiffs further contend the agreements are unfair in that both the SRILX LOC and IronLinx LOC do not require repayment of any loan until December 31, 2030. *Id.* ¶ 117. Loan schedules provided by Danby show that from March 2, 2020 through July 8, 2021, Greenville provided $1,006,000 in loans to SRILX Products, $112,000 of which has been repaid, and that from November 17, 2019 through January 31, 2021 Greenville provided $173,333.04 in

loans to IronLinx, $98,540 of which has been repaid. *See* ECF No. 24 ¶¶ 119–120; *Id.* Ex. J; *Id.* Ex. K. Additionally, although the SRILX LOC and the IronLinx LOC provide nominal interest rates of 5%, the respective loan repayment schedules show that neither SRILX Products nor IronLinx have paid any interest on the loans provided by Greenville. ECF No. 24 ¶ 121.

From October 2019 to March 31, 2021, Greenville, through the control of Danby, also transferred via mail or wire transfer $85,000 in loan money to SR Leasing. *Id.* ¶ 122. During that same time period, SR Leasing paid back less than half of the loan amount and did not pay any interest on the loans. *Id.; see also Id.* Ex. G; Ex. F. No line of credit agreement between Greenville and SR Leasing has been produced, and Jannuzzio and Nix were not aware of the loans at the time they were made or the terms associated with such loans. *Id.* ¶ 123.

From September 19, 2019 through March 31, 2021, Greenville also, at Danby's direction, extended loans to Danby of more than $27,000, which were primarily sent via mail or wire transfer. ECF No. 24 ¶ 124; *Id.* Ex. G. During this time period, Danby paid back $12,000 of the loan money and did not pay any interest on the loan money. *Id.*

Plaintiffs allege that these transactions demonstrate Danby's scheme to defraud Greenville and that SRILX Products, IronLinx, and SR Leasing's acceptance of the loans shows they participated in and aided and abetted Danby in this scheme.

Plaintiffs also argue that Danby's alleged scheme to defraud Greenville for his own benefit was further accomplished by improperly placing Greenville employees on IronLinx's payroll in order to apply for and receive a larger Paycheck Protection Program ("PPP") loan from the federal government. ECF No. 24 ¶¶ 129–135.

In or around late 2020, Jannuzzio and Nix began asking questions about the amounts of money Greenville was paying to the Danby Entities. *Id.* ¶ 140. In response, Danby threatened to increase the cost of services provided by the Danby Entities if Jannuzzio and Nix continued to raise questions. *Id.* Jannuzzio also questioned Danby occasionally about the amount of money that was paid to IronLinx and SRILX Products, but in response, Danby would become angry and hostile and state that Greenville was "his company" and claim he could transfer whatever funds he wanted out of Greenville and to the Danby Entities. *Id.* ¶ 141.

Plaintiffs allege that "Danby treats all of his companies, including the Danby Entities, as his alter ego and does not treat them as separate and distinct entities. He does not respect corporate formalities and deploys assets of his various companies as he sees fit." *Id.* ¶ 142. Plaintiffs emphasize that "Danby has exercised complete domination over the Danby Entities." ECF No. 24 ¶ 144.

At some point, Jannuzzio and Nix questioned Danby about membership distributions believing they were entitled to distributions proportionate to their respective ownership interests and that the reported net income for 2020 of $1.25 million was depressed. *Id.* ¶ 145.

In total for the work Jannuzzio did at Greenville from August 2019 through March 31, Greenville paid Jannuzzio $127,328 in salary and bonus compensation and $225,625 in member distributions. *Id.* If Greenville were to have distributed the entire $1.25 million of net income from 2020, Jannuzzio's proportionate share would have equaled $312,500. *Id.* ¶ 148.

In total for the work Nix did at Greenville from August 2019 through March 2021, Greenville paid Nix $123,963 in salary and bonus compensation and $45,125 in member distributions. *Id.* ¶ 150 If Greenville were to have distributed the entire $1.25 million of net income from 2020, Nix's proportionate share would have equaled $62,500. *Id.*

In May 2021, Danby approached Jannuzzio and Nix for their approval for Greenville to purchase a $4.85 million 124,000 square-foot building. ECF No. 24 ¶ 152. To do so, Jannuzzio would have needed to sign a personal guarantee for the building loan, which he did not want to do, as he did not believe Greenville had a need for the building. *Id.* ¶¶ 152–153. Jannuzzio questioned Danby about why Greenville needed such a large building and Danby, who allegedly wanted Greenville to acquire the new building for his IronLinx business, threatened Jannuzzio stating, "do not make me strong-arm you." *Id.* ¶ 153.

Following this dispute, Jannuzzio resigned as a Greenville employee and offered to sell his 25% membership interest to SRILX Partners, which would allow Greenville to move forward and acquire the building. ECF No. 24 ¶ 154. Danby rejected this offer. *Id.* Subsequently, in July 2021, Nix also resigned as a Greenville employee. *Id.* ¶ 156. Since their resignation, neither Jannuzzio nor Nix has received any membership distributions or any information from Danby about the business operations of Greenville.

## IV.    PROCEDURAL HISTORY

On March 29, 2022, Plaintiffs filed their initial Complaint in the United States District Court for the Eastern District of Pennsylvania. ECF No. 1. On April 25, 2022, following a meet and confer, the parties filed a stipulation providing a timeline for Plaintiff to submit an Amended

Complaint and setting deadlines for the remainder of the pleadings. ECF No. 21. On that same day the Court adopted the parties' stipulation and pleading schedule. ECF No. 22.

In adherence to the pleading schedule, Plaintiff filed its Amended Complaint on May 5, 2022. ECF No. 24. On May 19, 2022, Defendants Danby, Huang, GV Partners, IronLinx, SR Leasing, SRILX Partners, SRILX Products, Tandem Hosted Resources, LLC, and Tandem Hosted Resources, Inc., filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1. ECF No. 25. Nominal Defendant Greenville also filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 23.1 on May 19, 2022. ECF No. 26.

On June 9, 2022, Plaintiffs filed Responses (ECF Nos. 27, 28) to both Motions to Dismiss, and on June 14, 2022, Defendants filed a Reply in support of their Motions to Dismiss (ECF No. 29).

## V.    STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state 'a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility requires "more than a sheer possibility" that the defendant acted unlawfully. *Id.*

In this Circuit, courts must follow a three-step inquiry when evaluating a complaint: (1) "take note of the elements the plaintiff must plead to state a claim," (2) identify and disregard conclusory assertions because they "are not entitled to the assumption of truth," and (3) determine the well-pleaded factual allegations, assume their veracity, and then determine if they

give rise to a plausible entitlement to relief. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220–21 (3d Cir. 2011) (citations omitted); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). When deciding a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). We consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

## VI.  DISCUSSION

### A.  Plaintiff Jannuzzio and Plaintiff Nix Lack Standing Under 18. U.S.C. § 1964(c) to Bring Count I (RICO) in Their Individual Capacities

#### i.   Standard of Review

"Before the Court considers the sufficiency of a plaintiff's RICO claims brought under 18 U.S.C. § 1962 ("§1962"), it must address the threshold question of the adequacy of the pleadings as they relate to the heightened RICO standing requirements under [18 U.S.C.] § 1964(c) [("§ 1964(c)")]." *Ketner & Forgedale Trading, LLC v. Widell, Robinson Delaware Holdings, Inc. d/b/a Robinson Technical Products Corporation, et al.,* No. 5:20-CV-6360, 2021 WL 2808829, at *3 (E.D. Pa. July 6, 2021) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 520–21 (3d Cir. 1998)). Specifically, the Third Circuit has explained that the statutory standing requirement applicable to civil RICO suits set forth in § 1964(c) places a burden on a plaintiff to allege two elements. First, a plaintiff must allege that he or she suffered an injury to his "business or property." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482–83 (3d Cir. 2000). Second, a

16

plaintiff must allege that his injury was proximately caused by the defendants' § 1962 RICO violation. *Id.* In essence, as the Supreme Court has explained, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation [of RICO]." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

With respect to establishing the first element—injury to one's business or property—a plaintiff must demonstrate an injury in fact that is "concrete," "distinct and palpable," and "actual or imminent." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005) (citing *McConnell v. Federal Election Com'n*, 540 U.S. 93, 225 (2003)). The Third Circuit has explained that an injury to business or property requires "a concrete financial loss and not mere injury to a valuable intangible property interest." *Ketner*, 2021 WL 2808829, at *3 (citing *Maio*, 221 F.3d at 483); *see also Interfaith*, 399 F.3d at 254 (explaining that in order to have standing, a plaintiff must first demonstrate with particularity that she has suffered an injury to a "concrete and particularized legally protected interest").

The injury to business or property element "can be satisfied by allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." *Maio*, 221 F.3d at 483. Further, a plaintiff must be able to establish a *present* economic loss; a theory of financial injury that is "purely speculative" is not sufficient. *Id.* at 495 (internal quotations omitted); *see also Dornberger v. Metropolitan Life Ins. Co.*, 961 F.Supp. 506, 522 (S.D.N.Y.1997) (noting that plaintiff suffered no concrete financial loss stemming from insurer's alleged failure to provide guaranty fund protection as promised in plaintiff's insurance agreement, as "the guaranty fund would only become relevant upon [defendants'] insolvency, a future event whose occurrence is speculative").

With respect to the second required element of RICO standing—proximate cause—the Third Circuit has emphasized that "when a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Ketner*, 2021 WL 2808829 at *4 (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)); *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (explaining that generally a central element of proximate cause is showing "some direct relation between the injury asserted and the injurious conduct alleged"). Accordingly, to establish "a causal connection between the injury and the conduct complained of[,] the injury has to be fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] some third party not before the court.'" *Interfaith*, 399 F.3d at 255 (quoting *McConnell*, 540 U.S. at 225) (internal quotations and citations omitted).

More specifically, the Third Circuit has explained that when determining whether proximate cause exists in the context of a RICO standing analysis, a court must "consider[] three factors: (1) the directness of the injury; (2) the ease of apportioning damages among other plaintiffs affected by the alleged violation; and (3) the possibility that others, more directly injured, could vindicate the claim." *Schrager v. Aldana*, 542 F. App'x 101, 104 (3d Cir. 2013).

Further, a plaintiff must show that it is likely that the requested relief will remedy the alleged injury; thus, "[a]lthough standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, ... it often turns on the nature and source of the claim asserted." *Interfaith*, 399 F.3d at 255 (quoting *McConnell*, 540 U.S. at 227) (internal quotations omitted). The predicate act or acts alleged in relation to the RICO claim, must be the direct cause of the alleged financial harm, and courts may not engage in a multi-step analysis to link the predicate act tenuously to the claimed injury. In essence, in order to show proximate cause, the

claimed injury must be the next link in the chain of causation after the predicate act. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010) (explaining that the "general tendency" of the law in proximate cause inquiries is not to go beyond the first step).

Finally, and particularly relevant to Plaintiff's claims in the present matter, it is well-established in the Third Circuit that indirect or derivative harms to a shareholder do not confer RICO standing for claims brought individually. *Penn Mont Securities v. Frucher*, 502 F. Supp. 2d 443, 458 (E.D. Pa. 2007); *see, e.g.*, *Irish v. Ferguson*, 970 F. Supp. 2d 317, 347-51 (M.D. Pa. 2013) (member of a limited liability company cannot pursue a civil RICO claim on his own behalf when the LLC was the directly injured party); *Amos v. Franklin Fin. Servs. Corp.*, No. 1:CV-10-1285, 2011 WL 5903875, at *6 (M.D. Pa. 2011) (dismissing RICO claims by shareholders for want of causation upon finding their injuries were derivative of harm to corporate entity), *aff'd* 509 Fed. Appx 165 (3d Cir. 2013); *John L. Motley Associates, Inc. v. Rumbaugh*, 104 B.R. 683, 687 (E.D. Pa. 1989) ("There is no shareholder standing to assert RICO claims where the harm to the shareholders is derivative of the harm to the corporation"); *McCoy-McMahon v. Godlove*, No. 08-5989, 2011 WL 4820185, at *13 (E.D. Pa. 2011) ("When the victim of a RICO violation is a corporation and the shareholder indirectly suffers harm from the corporate injury, proximate cause is not met").

To determine whether a claim brought by a shareholder is derivative, this Court must determine "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or any other remedy (the corporation or the stockholders, individually)." *Id.* at *14 (quoting *Tooley v. Donaldson, Lufkin & Jenrette*, 845 A.2d 1031, 1033 (Del.2004)). Notably, in the context of analyzing proximate

cause for RICO standing, the Third Circuit has spread a wide net for what constitutes a derivative harm. For example, in the shareholder context, actions that decrease the value of the corporation have been held not to confer RICO standing on individual plaintiffs. *See e.g.*, *Penn Mont Securities*, 502 F. Supp. 2d 443 (explaining that share dilution was a derivative harm that flowed from an injury to the corporation); *see also Schrager*, 542 F. App'x at 103-04 (applying analogous reasoning to the trusts and estates context and holding that the beneficiary of an estate lacks standing because the direct victim was the estate itself).

### ii.    Analysis

In the present case, Plaintiffs have failed to allege, within the meaning of RICO's statutory standing requirements, that they suffered any concrete non-speculative loss to their personal business or property, and thus they lack standing to bring Count I in their individual capacities. It is well-settled in the Third Circuit that individuals cannot bring a RICO action alleging harm purely to a company in which they are shareholders. In an attempt to avoid this hurdle, Plaintiffs strive in the Amended Complaint to characterize their alleged harms as personal injuries, emphasizing *inter alia* their individual grievances with Danby. However, no matter how sour this personal relationship has become, the Court's analysis must focus on the true nature of the harms alleged in connection to the RICO claim, which this Court finds are unequivocally derived from harms to Greenville. In short, despite Plaintiffs' manifest desire to individually recover or their feelings that Danby personally wronged them, all of Plaintiffs' claimed injuries related to their RICO claim are derivative of harm to Greenville and thus cannot be maintained individually for lack of standing. *See* 18. U.S.C. 1964(c).

Plaintiffs argue that they have suffered a concrete financial loss because, according to the allegations set forth in the Amended Complaint, the fraudulent acts Danby engaged in diverted

millions away from Greenville, depressed its net profit, and as a result, took from Plaintiffs their pro rata share of distributions, which they claim they are entitled to under Section 5.02 of Greenville's Operating Agreement. ECF No. 24 Ex. A § 5.02(a); ECF No. 24 ¶ 8. Yet, despite these assertions, Plaintiffs have, in actuality, failed to plead any facts that show a concrete injury to their individual business or property.

First, as an initial matter, the plain language of the Operating Agreement includes no mandatory distribution requirement, and the language regarding distributions creates a purely discretionary right, and thus creates a purely speculative harm. Specifically, the Operating Agreement provides that "[f]rom time to time a majority of the Members shall determine to what extent (if any) [Greenville's] cash on hand exceeds its current and anticipated needs" and "if such excess exists, the Member or the Manager **may** cause the Company to distribute to the Members, in accordance with their Sharing Ratios, an amount in cash equal to that excess." ECF No. 24 Ex. A § 5.02 (emphasis added). It further provides that "[n]o member shall have a contractual right to any distribution [other than those relating to liquidation of assets,]" and contains no requirement for non-discretionary distributions. ECF No. 24 Ex. A, § 5.02. Since these distributions are plainly not required, this Court finds that Plaintiffs have failed to plead facts establishing any individual right to distributions under the terms of the Operating Agreement and therefore have failed to plead any concrete non-speculative individual RICO injury.

Second, even if the Plaintiffs were entitled to distributions, their claimed injuries would not constitute any concrete financial loss to *their* business or property, as every harm claimed in relation to the RICO claim constitutes, first and foremost, a harm to Greenville. *See, e.g.*, *Ketner*, 2021 WL 2808829 (finding that that a plaintiffs' claimed injuries stemmed from their partial

ownership of a joint venture, and that merely alleging they did not receive their full share of the venture's profits was insufficient to establish RICO standing).

In sum, Plaintiffs did not suffer any individual harm despite their attempt to characterize their losses as such, and thus, Plaintiffs have failed to plead an individual concrete injury sufficient to confer standing under the heightened statutory standing requirements of civil RICO. *See* 18. U.S.C. 1964(c).

Plaintiffs have also failed to plead facts that show the alleged RICO violations were the proximate cause of their claimed injuries. Plaintiffs allege that "Greenville's net profit is not reflective of its sales and costs" because of Danby's efforts to defraud the Company and Jannuzzio and Nix. ECF No. 24 ¶ 76. Plaintiffs claim that the pattern of racketeering engaged in by Defendants included: "causing Greenville to pay more than $7 million to the Danby Entities, the Overseas Account, and Huang [for services not rendered]…; [Danby] using Greenville as a personal piggybank...; placing Greenville employees on IronLinx's payroll…; directly competing with and using Greenville's employees, assets, and resources…; diverting corporate assets and usurping corporate opportunities of Greenville." ECF No. 24 ¶ 181. Finally, Jannuzzio and Nix claim that the Defendants "destroy[ed] Jannuzzio's and Nix's investment in Greenville" by their conduct and "hid[ ] the true amounts" of Greenville's profits "to avoid paying Jannuzzio and Nix their proper share of distributions[.]" ECF No. 24 ¶ 181. In short, each and every harm alleged in the Amended Complaint in connection to the RICO claims brought individually are primarily harms to Greenville, as a corporation, rather than harms primarily to Plaintiffs Jannuzzio and Nix individually, and accordingly Plaintiffs Jannuzzio and Nix cannot establish that any of their claimed injuries were proximately caused by the alleged RICO violations. *Penn Mont Securities*, 502 F. Supp. 2d at 458; *see also  Ketner* at *4 (citing *Anza*, 547 U.S. at 461) ("when a court

evaluates a RICO claim for proximate cause, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

To begin with and as discussed above, assuming the allegations made in the Amended Complaint constitute RICO violations, Plaintiffs' claims that their distributions were negatively impacted by Greenville's depressed net income constitute only indirect harms and do not confer them standing to proceed individually. *Penn Mont Sec. v. Frucher*, 502 F. Supp. 2d 443, 466–67 (E.D. Pa. 2007) ("Indirect or derivative harms to a shareholder plaintiff do not confer RICO standing"); *Id* ("Under a proximate causation analysis… "assuming [a company's] dilution resulted from a RICO violation," then "that defendants' RICO violation caused an injury to the corporation, which then injured [individual shareholder plaintiffs] [and accordingly,] [t]he necessary middle step between the violation and any harm to [the shareholder plaintiff], namely, the injury to the corporation, precludes a finding of proximate causation because the harm is too attenuated."). This is particularly true in the present case, where the plain language of the Operating Agreement only provides for discretionary distributions making the harm entirely speculative.

Further, to the extent Plaintiffs Jannuzzio and Nix are alleging that they were individually harmed by Defendant Danby mismanaging corporate funds by making self-interested payments to third parties for services not rendered and that Danby diverted Greenville's funds through self-serving loans that Plaintiffs knew nothing about, this Court finds that such allegations do not constitute any individual harms proximately caused by the claimed misconduct, as these harms are fundamentally harms to Greenville as a corporation. ECF No. 24 ¶¶ 79–81; ¶¶ 99-103; *Id.* ¶¶ 108-111.This conclusion is in line with other decisions within the Third Circuit.  For example, in *Irish v. Ferguson*, plaintiff Irish, a member of Lakefront LLC, brought a RICO suit in his

individual capacity, but the district court found that he lacked standing to do so on the grounds that he had only alleged direct harms to the LLC. There, the district court explained that the "allegations of corporate waste," which included, *inter alia*, allegations of payments for services not rendered and loans made without notice to plaintiffs, "d[id] not confer standing on a member of a limited liability company." 970 F. Supp. 2d at 349. Such waste, the court found, was "a classic derivative harm because it diminishe[d] the value of the corporation as a whole and entitle[d] the corporation to recover damages." *Id.* (quoting *Penn Mont Securities*, 502 F.Supp.2d at 458). As the district court found in *Irish*, this Court finds here that these types of harms alleged by Plaintiffs in relation to their RICO claim (i.e., mismanagement of Greenville's funds for services not rendered and loans distributed by Greenville without notice to Plaintiffs), are by nature harms to Greenville, not to Plaintiffs Jannuzzio and Nix as individuals because they diminish the value of Greenville as a whole rather than any business or property owned by Jannuzzio and Nix individually.

Additionally, in an attempt to characterize the harms alleged as individual harms, Plaintiffs also emphasize that Danby did not have or was not willing to provide them with Greenville's financial information. ECF No. 24 ¶¶ 143-145. Yet, a plaintiff who lacks standing cannot "sidestep" the harm requirement by framing their allegations as misrepresentations or failure to disclose relevant information. *Ketner*, 2021 WL 2808829 (citing *In re Sunrise Sec. Litig.*, 916 F.2d 874, 883 (3d Cir. 1990)).

In determining whether proximate cause has been met courts should also assess who would receive the benefit of any recovery. *Ketner*, 2021 WL 2808829 at *4. When the alleged wrong is primarily against the corporation, or to the whole body of its stock or property, the cause of action belongs to the corporation itself. *See Rumbaugh*, 104 B.R. at 686. Here, the

injury alleged was the harm done to the value of Greenville as a whole. Plaintiffs do not specify discrete spending by Danby of funds that belonged to them personally, but rather assert that because of the mismanagement and intentional diversion of corporate funds their profit distributions were lower than they should have been. Thus, it follows that any restitution would properly put the funds back into the corporate treasury and not directly into the pockets of Plaintiffs, despite the fact that Plaintiffs appear primarily concerned with individual recovery and do not ask for any specific relief on behalf of Greenville.

Ultimately, for the reasons stated above, this Court finds that Plaintiffs have not pled sufficient facts to confer individual standing with respect to their civil RICO claim (Count I).

### B. Plaintiff Jannuzzio and Plaintiff Nix Lack Derivative Standing Under Federal Rule of Civil Procedure 23.1 to Maintain Their Derivative Claims

#### i. Standard of Review

Derivative actions brought in federal court must adhere to certain statutory requirements set forth in Federal Rule of Civil Procedure 23.1 ("Rule 23.1") that ensure only those well-positioned to serve as derivative plaintiffs are able to maintain such suits.  Fed. R. Civ. P. 23.1; *see e.g., Banks v. Whyte*, No. CIV. A. 94-CV-0711, 1994 WL 418997, at *2 (E.D. Pa. Aug. 9, 1994) ("Complaints in derivative actions must aver that the requirements of Rule 23.1 are met. If the complaint fails to set out the necessary averments, a motion to dismiss under Rule 12(b)(6) is appropriate"). Pursuant to Rule 23.1(a)[4] "a shareholder may bring a derivative action to enforce a

---

[4] The Court notes Fed. R. Civ. P. 23.1(b) also sets forth specific pleading requirements for derivative actions, but that none are at issue in the present matter. Specifically, Rule 23.1(b) requires that in derivative actions, the complaint must be verified and needs to (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law; (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and (3) state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or

right that a corporation possesses but has failed to enforce. However, 'if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association,' the derivative action may not be maintained." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 349–50 (D.N.J. 2019) (citing Fed. R. Civ. P. 23.1(a)). "At the motion [to] dismiss stage, district courts are not called upon to make affirmative factual findings that a named plaintiff will fairly and adequately represent the interests of other shareholders. [Rule 23.1(a)] is more modest; it provides only that a derivative suit 'may not be maintained if it appears that the named shareholder does not fairly and adequately represent the other shareholders.'" *Austar Int'l Ltd.*, 425 F. Supp. 3d at 350 (citing Fed. R. Civ. P. 23.1(a)); *but see Banks*, 1994 WL 418997, at *2 (finding that because "the Court must have sufficient information in order to make a determination concerning whether [the plaintiff] is actually a fair and adequate representative… the Court to consider facts presented to the Court by affidavit and at oral argument, as well as the information contained in the [c]omplaint").

In the Third Circuit, determining whether representation is adequate under Rule 23.1 "depends on two factors:" (1) whether the plaintiff's attorney is "qualified, experienced, and generally able to conduct the proposed litigation"; and (2) whether the plaintiff has "interests antagonistic to those of the class." *Vanderbilt v. Geo-Energy Ltd.,* 725 F.2d 204, 207 (3d Cir. 1983).

---

comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort. Fed. R. Civ. P. 23.1(b).

The competency of the Plaintiffs' attorney is not in dispute in the present case, and accordingly, the Court will not address this factor, leaving whether Plaintiffs' interests are "antagonistic" to those of the class as the only remaining inquiry. *Id.*

To determine whether a plaintiff's interests are antagonistic to "those of the relevant shareholder class" courts in the Third Circuit consider the following factors relevant:

> economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

*Austar Int'l Ltd.*, 425 F. Supp. 3d at 350–51 (quoting *Vanderbilt*, 725 F.2d at 207). In conducting this analysis "no single factor is dispositive[, and] the Court is to examine the combination of factors as they apply to the circumstances of the case." *Banks*, 1994 WL 418997, at *3 (E.D. Pa. Aug. 9, 1994).

###### ii.   **Analysis**

As a threshold matter, in the present case, Defendants argue Plaintiffs Jannuzzio and Nix do not fairly and adequately represent Greenville's interests or the interests of SRILX Partners (Greenville's 70%, majority shareholder). As the only minority shareholders, however, Jannuzzio and Nix are *not* similarly situated to SRILX Partners, Greenville's majority shareholder, in enforcing the rights of Greenville, and accordingly, whether or not Plaintiffs Jannuzzio and Nix fairly and adequately represent SRILX Partners, is irrelevant to this Court's inquiry.  ECF No. 25 p. 8; [5] ECF No. 26 p. 5; *see Schupack v. Covelli*, 512 F. Supp. 1310, 1312

---

[5] Page numbers refer to ECF page numbers throughout.

(W.D. Pa. 1981) ("Rule 23.1 does not require 'that derivative action plaintiffs have the support of a majority of the shareholders or even that they be supported by all the minority shareholders.' "); *Id.* ("The true measure of adequacy of representation under Rule 23.1 is not how many shareholders does the plaintiff represent. Rather it is how well does this representative plaintiff advance the interest of other similarly situated shareholders."); *see also Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-CV-993, 2011 WL 2118072, at *6 (S.D. Ohio May 27, 2011) ("Similarly situated shareholders do not include majority shareholders opposed to the derivative action, for otherwise a derivative suit could not be brought if the interests of the controlling shareholders coincided with those of the defendants"). Where there are no other minority shareholders besides Jannuzzio and Nix, requiring them to also represent the majority shareholder's best interests would leave them without a path to remedy for any legitimate allegations involving misconduct of the majority shareholder or those with whom the majority shareholder is aligned. *Joseph Oats Holdings, Inc. v. RCM Digesters, Inc.*, No. CV 06-4449 (NLH), 2008 WL 11381898, at *5 (D.N.J. Mar. 27, 2008).

Nonetheless, while this Court agrees Jannuzzio and Nix are not barred from bringing a derivative action on the grounds that their interests conflict with majority shareholder, Plaintiffs ask this Court to take this analysis a step further and argue that "Jannuzzio and Nix need not represent the interests of SRILX [Partners] (the Majority Member of Greenville) **or Greenville**, as Rule 23.1 only requires that 'plaintiff…be an adequate representative for those 'similarly situated.' " ECF No. 27 p. 11 (emphasis added); *see also* ECF No. 28 p. 9. Yet, this broad conclusion that there should be no consideration as to a derivative plaintiff's relationship with the corporation it seeks to represent runs contrary to the very purpose of derivative actions, as derivative suits, by nature, are intended "to place in the hands of the individual shareholder a

means to **protect the interests of the corporation** from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (emphasis added).

While Jannuzzio and Nix are the only minority shareholders and there is no greater class of shareholders to compare their interests to, this does not render the analysis of whether or not they fairly and adequately represent their class of minority shareholders for purposes of the derivative action entirely moot—as self-professed derivative plaintiffs, claiming to be a class-of-two linked together by their minority shareholder interests in Greenville, Jannuzzio and Nix are necessarily seeking to act as Greenville's fiduciary in this suit and therefore their relationship to Greenville cannot be irrelevant. *See e.g., Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992) *(*"A plaintiff in a shareholder derivative action owes the corporation his undivided loyalty. The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda"). This concept is also self-evident from the plain language of Rule 23.1, which provides that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in **enforcing the right of the corporation or association**" (*see* Fed. R. Civ. P. 23.1 (emphasis added)).

Moreover, this point is made manifest by the factors the Third Circuit has found pertinent to a court's analysis of derivative standing under Rule 23.1. Specifically, in analyzing whether a shareholder is a fair and adequate representative of a class of similarly situated shareholders in derivative actions, the factors the Third Circuit has found important for consideration are not limited, myopically, to the relationship between the shareholder representative and similarly situated shareholders in a vacuum, but also require the examination of a broader context

including the representative plaintiff's relationship with the corporation and with the defendants (specifically, the factors include consideration of "the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; [and] plaintiff's vindictiveness toward the defendants"). *See Vanderbilt*, 725 F.2d at 207. In fact, only two of the factors identified as relevant to Rule 23.1's fair and adequate representation analysis go directly to the actual nature of the relationship between the representative and the greater class of similarly situated shareholders (i.e., "economic antagonisms between representative and class" and the "degree of support plaintiff was receiving from the shareholders he purported to represent"). *Id.* In sum, this Court finds that Jannuzzio and Nix are not automatically entitled to bring a derivative suit on behalf of Greenville merely because they are its only minority shareholders, and are thus, not immune from this Court's careful application of the multi-factored analysis the Third Circuit engages in when determining derivative standing pursuant to Rule 23.1.

Further, because Jannuzzio and Nix are the only minority shareholders and thus only represent themselves and not a wider class of minority shareholders, the posture of this case is, in large part, analogous to a class-of-one derivative action, in which a single minority shareholder or 50% shareholder in a 50% to 50% ownership structure brings a derivative suit on behalf of a corporation representing just themselves, as the entire "class." Obviously, in the instant case Jannuzzio and Nix are two separate shareholders and thus, in technical terms a "class-of-two," but because they are the entire class they represent, the same concerns arise here as do when courts consider a class-of-one derivative action. For these reasons, the Court finds it helpful

context to consider the ways courts have handled cases involving a single minority shareholder attempting to bring a derivative action without majority shareholder support. "Although the "class-of-one" issue has not been squarely addressed by the Third Circuit, other courts have held that a single shareholder such as [plaintiff] may pursue a derivative claim." *Austar Int'l Ltd.*, 425 F. Supp. 3d at 351.[6] In doing so, courts often rest their holdings, at least in part, on the absence of any inclination of conflict between the individual's interests and the interests of the corporation. *See ShoreGood Water Co. v. U.S. Bottling Co.*, No. CIV.A. RDB08-2470, 2009 WL 2461689, at *6 (D. Md. Aug. 10, 2009) (discussing how federal courts across various districts analyze class-of-one derivative actions under Rule 23.1).

For example, in finding a plaintiff constituted a "legitimate class of one" the court in *Halsted Video, Inc. v. Guttillo,* relied on its finding that "there was absolutely no evidence" that the plaintiff "would not adequately enforce [the company's] rights in [the] litigation" and that the defendants did not claim that plaintiff had any "ulterior motives in maintaining [the] lawsuit." 115 F.R.D. 177, 180 (N.D.Ill. 1987); *see also ShoreGood Water Co.*, 2009 WL 2461689, at *6 ("in order for a sole shareholder's derivative claim to proceed, it must fairly represent the interests of the corporation"); *Id.* (denying plaintiff to bring a derivative suit as a "class-of-one" on the grounds that "the crux of [the plaintiffs'] lawsuit is to recover money allegedly owed—a personal goal focused on an external interest that is at odds with the underlying purpose of a derivative action, which is fiduciary in nature").

> **a)    Upon consideration of the relevant factors, this Court finds that Plaintiffs' derivative claims asserted in the Amended Complaint may not properly be maintained under Rule 23.1.**

---

[6] *But see Kuzmickey v. Dunmore Corp.*, 420 F. Supp. 226, 231 (E.D. Pa. 1976) (finding a class of one was impermissible in a derivative action where there were six other minority shareholders who were not defendants and who submitted affidavits stating that plaintiffs did not represent their interests and that the suit was not in the best interest of the corporation.

Upon consideration of the above and for the reasons states below, this Court finds that Plaintiffs Jannuzzio and Nix are, in the present context, not well-suited to fairly and adequately represent their shareholder class in enforcing the rights of Greenville because significant conflicts of interest exist that would inhibit them from adequately enforcing Greenville's rights in the litigation. Accordingly, the derivative claims asserted in the Amended Complaint may not be maintained in federal court under Rule 23.1 and will be dismissed without prejudice.

With respect to the factored analysis the Court finds the following:

**(1)**   ***Economic antagonisms between representative and class***

In the present matter, the only class members are Jannuzzio and Nix. Yet, as shareholders seeking to act as derivative plaintiffs, their class-of-two is inseparably tied to the interests of the corporation. *See* Fed. R. Civ. P. 23.1 (stating "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated **in enforcing the right of the corporation or association**") (emphasis added)). Accordingly, the Court finds economic antagonisms between Plaintiffs, Jannuzzio and Nix, and the corporation, Greenville, are, at least to some degree, relevant to its analysis.

It is undisputed that Plaintiffs Jannuzzio and Nix resigned from their employment at Greenville and are involved with their own competing e-commerce jewelry retailers, demonstrating a direct economic antagonism[7]

---

[7] The Court also notes that Plaintiffs ask this Court to disregard their direct economic antagonism to Greenville because the Operating Agreement explicitly permits them to be involved with competing business interests. This, however, does not change this Court's analysis because whether or not Jannuzzio and Nix have a contractual right to engage in directly competitive

between them and Greenville. ECF No. 24 ¶¶ 162, 164. Further, and as
discussed in additional detail below, Plaintiffs' individual claims and the
remedies sought by them as relief for their direct claims demonstrate that
Plaintiffs seek to recover individually from the same pool of money that would
make Greenville whole from its alleged harms. *See, e.g.*, *ShoreGood Water
Co.*, 2009 WL 2461689, at \*5; *see also Banks*, 1994 WL 418997, at \*4.

For these reasons, the Court finds that this factor weighs in favor of
prohibiting Plaintiffs Jannuzzio and Nix from serving as derivative plaintiffs in
this particular context.[8,]

**(2)    *The remedy sought by plaintiff in the derivative action***

In the Amended Complaint, Plaintiffs largely conflate the remedies
sought on behalf of Greenville with the remedies sought on behalf of
Jannuzzio and Nix individually, and tellingly, the only specific damages-
requests Plaintiffs make are for individual recovery. *See generally* ECF No. 24.
Moreover, upon consideration of the individual recovery sought by Jannuzzio
and Nix, this Court finds that there exists an actual conflict of interests that
would inhibit their ability to serve as proper derivative plaintiffs. Specifically,

---

behavior does not change the actuality that engaging in directly competitive behavior creates an
economic antagonism between Plaintiffs, Jannuzzio and Nix, and Greenville. *See, e.g.*, ECF No.
27 pp. 14–15.

[8] The Court notes that no one factor is dispositive and that even if this factor were found to be
inapplicable to the present situation due to the fact that Jannuzzio and Nix are the only class
members, the Court finds that upon consideration of the remainder of the factors, its conclusion
that Jannuzzio and Nix should not be permitted to derivatively represent Greenville would
remain the same. *See, e.g.*, *Banks*, 1994 WL 418997, at \*3 ("[n]o single factor is dispositive; the
Court is to examine the combination of factors as they apply to the circumstances of the case").

Plaintiffs request, *inter alia*, that the Court order an "award of damages in order to equalize the distribution made to the members of Greenville according to their percentage ownership interests." ECF No. 24 ¶ 184. This request creates an actual conflict of interest between Plaintiffs, Jannuzzio and Nix, and Greenville because whether or not Plaintiffs Jannuzzio and Nix are entitled to such distributions at all is an open question, and furthermore, the pay-out of such distributions would necessarily be from the same pool of money that Greenville is seeking to recover from with respect to the alleged diverted portions of its net income. *See, e.g.*, *ShoreGood Water Co.*, 2009 WL 2461689, at *5 ("[w]here a derivative action and a plaintiff's individual monetary recovery are in competition for the same pool of money, it makes it further unlikely that plaintiff will be an appropriate derivative plaintiff").

Accordingly, the Court finds that this factor also weighs in favor of prohibiting Plaintiffs Jannuzzio and Nix from serving as derivative plaintiffs in this particular context.

**(3)** *Indications that the named plaintiff was not the driving force behind the litigation*

In the present matter, Jannuzzio and Nix are the named Plaintiffs and the only class-members and there is no indication any other third-party is the driving force behind the litigation. This factor, although not particularly relevant to the facts in this case, does not weigh against Plaintiffs serving as derivative plaintiffs in this context.

**(4)** *Plaintiff's unfamiliarity with the litigation*

Here, there is no indication Plaintiffs are unfamiliar with the litigation

and in fact, Plaintiffs, as the only minority shareholders, are exceptionally familiar with the issues involved in the litigation. Thus, this factor does not weigh against Plaintiffs serving as derivative plaintiffs in this context.

**(5)**     ***Other litigation pending between the plaintiff and defendants***

It is undisputed that there is pending litigation involving Plaintiffs and various Defendants. Both parties agree that Jannuzzio and Nix are named defendants in a suit brought by Greenville in the Court of Common Pleas of Chester County, Pennsylvania, docketed at CCP No. 2022-02251-TT (*see* ECF No. 26 Ex. A), which alleges, in sum, that Jannuzzio and Nix "left their employment at Greenville; looted the Company on the way out; plundered and refused to turn over assets essential to the continued operation of Greenville; held such assets hostage in an effort to maximize a buy-out of their membership interest…; effectively ground Greenville's business to a halt; and[] nearly destroyed the company." ECF No. 26 p. 8.  The conflict created by this pending litigation goes to the subject matter of the present suit, in that, *inter alia*, the suit brought by Greenville against Jannuzzio and Nix is effectively "the mirror image" of the present suit in that both are "essentially a battle to assess blame for the plundering of [Greenville.]" *Banks*, 1994 WL 418997, at *4.

Additionally, Iron Gate Hardware, LLC (a defendant in the present litigation) named Jannuzzio and Nix as defendants in a separate federal case before this Court alleging copyright infringement of jewelry designs by Jannuzzio and Nix and their e-commerce companies (*see* 22-cv-1132-CFK; ECF

No. 26 Ex. B). The extent to which the Court should consider these other litigations is in dispute.

Plaintiffs contend that the Court should disregard the pending litigation between the parties because it was initiated by Defendants and that "[c]learly it is the Defendants who have filed these lawsuits as leverage, and for purposes of casting doubt on the claims Jannuzzio and Nix make herein. *See* ECF No. 27 pp. 18–20; ECF No. 28 pp. 17–19. Specifically, Plaintiffs provide that "concerns in case law…about plaintiffs using the derivative claim as leverage do not exist here because the derivative demand predates both litigation[, that thus] Plaintiffs could not have been attempting to gain leverage for suits that did not even exist yet." ECF No. 27 p. 20; *see also* ECF No. 28 p. 19 ("Jannuzzio and Nix did not initiate the other [two] lawsuits, but rather were named as defendants therein ***after*** they made a formal demand to Greenville to take action against Danby and Danby [E]ntities…[and that] [c]learly, the Defendants herein filed these lawsuits as leverage, and for purposes of casting doubt on the claims Jannuzzio and Nix make herein") (emphasis in original).

Yet, as Defendants point out, the timeline of events laid out in the Amended Complaint draws Plaintiffs' argument into question, as Plaintiffs' argument that Defendants' other lawsuits were brought as leverage relies on Plaintiffs striking first, and notably, the procedural timeline here reveals that prior to the pending litigation and most importantly, prior to Plaintiffs Jannuzzio and Nix bringing the present action, Greenville Ventures, LLC "sen[t] an arbitration demand letter to Jannuzzio and Nix." ECF No. 24 ¶ 162.

Thus, it is not out of the question that it is actually Plaintiffs who have brought their derivative claims as leverage points in response to the arbitration demand. *Vanderbilt*, 725 F.2d at 208; *Banks*, 1994 WL 418997, at *4 ("Courts have recognized that a derivative action may be leverage for purposes of obtaining a favorable settlement in another action between the parties").

Nevertheless, the Court does find that generally "less weight should be given to a corporate defendant's claim for disqualification of the representative shareholder class where the corporate defendant was the one who initiated the litigation about which it now complains." *Vanderbilt*, 725 F.2d at 208.

Thus, while this Court does not give significant weight to the existence of other litigation brought by Defendants against Plaintiffs, it does find that in the present matter, it is appropriate to give it some weight, and that it weighs in favor of not allowing Plaintiffs to proceed with their derivative actions.

**(6)** ***The relative magnitude of plaintiffs' personal interests as compared to their interest in the derivative action***

"A shareholder in a shareholder derivative action owes the corporation his undivided loyalty. The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda…[and] [w]hen the derivative claim pales in comparison with the plaintiff's outside interests, there is a substantial likelihood that the derivative action will be used as a weapon in the plaintiff shareholder's arsenal, and not as a means of protection for shareholders." *Banks*, 1994 WL 418997, at *5 (internal citations and quotations omitted). Here, it is evident from the circumstances and facts set

forth in the Amended Complaint that Plaintiffs' personal interests far outweigh their interests in the derivative actions.

First, as addressed above, the Court finds that there is an actual conflict between the individual claims brought by Plaintiffs and the derivative claims. *See Grgurev v. Licul*, 229 F. Supp. 3d 267, 296 (S.D.N.Y. 2017) ("[a]n actual conflict may exist where substantial recovery on the [direct] claim may reduce the potential recovery on behalf of the corporation on the derivative claim") (internal quotations and citations omitted); *see also Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 n.6 (S.D.N.Y. 1976) (observing that a "plaintiff must, on occasion, choose between the pursuit of his personal interest and that of the corporation").

In the present case, Plaintiff is alleging that Danby "treated the Company [Greenville] as his own personal piggy bank, by stuffing the coffers of the Danby Entities through repeated self-interested transactions, hiding the amounts of profits and distributions in order to avoid paying Jannuzzio and Nix their proper share under section 5.02 of the Operating Agreement and more recently by completely freezing Jannuzzio and Nix out of their membership interests in the Company and intentionally devaluing Greenville." ECF No. 24 ¶ 8. Plaintiffs' contention that they are entitled to distributions pursuant to 5.02 of the Operating Agreement is adverse to Greenville's interests in this suit. Jannuzzio and Nix cannot possibly fully defend Greenville's interest in the money that Danby allegedly stole from it, while also maintaining their own *personal* interest in that money when it is an open

question whether or not they entitled to any distributions at all. Further, the additional allegations of harm to Greenville, in particular the alleged self-interested loans or lines of credit that Danby provided to the Danby Entities, as well as the money paid to Danby Entities for services allegedly not provided to Greenville constitute harms to Greenville that warrant relief directly to Greenville. Additionally, further conflict exists in that Jannuzzio and Nix also ask this Court to force Greenville to buy out their ownership shares from Greenville. For these reasons, the Court finds Plaintiffs Jannuzzio and Nix are "pursuing [their] own personal agenda[s] and [thus] cannot give [Greenville their] undivided loyalty." *Banks*, 1994 WL 418997, at *5.

**(7)**   ***Plaintiff's vindictiveness toward the defendants***

It would be impossible to read the Amended Complaint and additional filings and not become acutely aware of the hostility that exists between the Plaintiffs and Defendants. While the animosity appears to stem both ways, it is clear to the Court that Plaintiffs are motivated in this suit by their self-interest rather than the interest of Greenville, given the patent conflicts between these two interests. Therefore, it is not hard for the Court to infer that the inclusion of the derivative claims is a result of Plaintiffs' vindictiveness rather than a true desire to enforce Greenville's rights against alleged malfeasance.

In sum, only two of the seven factors weigh in favor of allowing Plaintiffs to proceed derivatively, and neither of these factors is particularly persuasive given the factual context of the present case. Thus, while this Court agrees with its peer that "[t]he mere fact that a derivative

plaintiff has other interests adverse to the interests of the corporation will not automatically disqualify him, even if the other interests are the subject of pending litigation between the derivative plaintiff and the corporation," it finds, here, that upon careful consideration of all the relevant factors, Plaintiffs are not in an appropriate position to serve as derivative plaintiffs for Greenville, as significant conflicts of interest exist and there are serious questions as to Plaintiffs motivations in bringing the derivative actions. *Banks*, 1994 WL 418997, at *3. In making this determination, this Court was particularly mindful of the fact that as the only two minority shareholders, Plaintiffs Jannuzzio and Nix are the only ones who are in a position to protect against the malfeasance of a majority shareholder, yet given the present circumstances, it is clear to this Court that Plaintiffs have chosen to put their own interests above those of Greenville and it would be improper under the Federal Rules of Civil Procedure to allow them to continue as derivative plaintiffs while simultaneously pursuing their individual claims. *Petersen*,, 416 F. Supp. at 475 n.6 (observing that a "plaintiff must, on occasion, choose between the pursuit of his personal interest and that of the corporation"); *see also* Fed. R. Civ. P. 23.1 ("The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association").

### C. The Court will Decline to Exercise Jurisdiction Over the Remaining State Law Claims

#### i. Standard of Review

A court "may decline to exercise supplemental jurisdiction [over state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right," and thus, whether or not to exercise supplemental jurisdiction once all federal claims have been dismissed

is within the discretion of the district court. *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512,

519 (E.D. Pa. 2019) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct.

1130, 16 L.Ed.2d 218 (1966)). "When all federal claims are eliminated before trial, 'the balance

of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the

remaining state-law claims.'" *Id.* (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988)).

### ii.    Analysis

As discussed above, this Court will dismiss Count I in its entirety without prejudice on

jurisdictional grounds,[9] and will also dismiss derivative Counts II, III, V, VI, VII without

prejudice, and accordingly, the only remaining claims are state law claims brought individually

by Jannuzzio and Nix. As this case has not progressed past the motion to dismiss stage and the

Court has not yet considered the merits of the state law claims, it finds it appropriate to exercise

its discretion and dismiss the remaining state law claims without prejudice.

## VII.    CONCLUSION

For the reasons explained above the Defendants Danby, Huang, GV Partners, IronLinx,

SR Leasing, SRILX Partners, SRILX Products, Tandem Hosted Resources, LLC, and Tandem

Hosted Resources, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 25) and

Defendant Greenville's Motion to Dismiss (ECF No. 26) will be **GRANTED** and the Amended

Complaint (ECF No. 24) will be dismissed, without prejudice, in its entirety.

---

[9] The Court notes again that it need not reach the question of whether Plaintiffs have adequately pled a substantive RICO claim because, for the reasons set forth herein, Plaintiffs have failed to meet the standing requirements necessary to bring the RICO claim individually or derivatively on behalf of Greenville.

BY THE COURT:

/s/ *Chad F. Kenney*

_____

**CHAD F. KENNEY, JUDGE**